**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **DONALD ROY O'GUIN, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. ____________** |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **UNICHEM PHARMACEUTICALS** | ) | |
| **(USA) INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## INTRODUCTION

Plaintiff, DONALD ROY O'GUIN, III, brings this cause of action against Defendant, UNICHEM PHARMACEUTICALS (USA) INC. for personal injuries he received due to consumption of a pharmaceutical that was prescribed to him in a reasonable dosage to treat his medical conditions. Plaintiff was provided an adulterated and mislabeled drug that Defendant placed into the stream of commerce without adequate testing, and which proved to be 263.8% of the label amount. Defendant violated both Tennessee state statutes and federal statutes and regulations, resulting in Plaintiff's consumption of the defective product and Plaintiff suffering serious permanent injuries.

## PARTIES

1. Plaintiff, Donald O'Guin (herein "Plaintiff"), is a citizen and resident of Rutherford County, Tennessee.

2. Defendant, UNICHEM Pharmaceuticals (USA) Inc. (hereinafter "Defendant" or "Unichem"), is a New Jersey corporation with its principal place of business located at One Tower Center Blvd #2200, East Brunswick, NJ 08816, with its Registered Agent for service of process

being Princeton South Corporate Center, SUITE 160, 100 Charles Ewing Blvd., Ewing NJ 08628. At all times relevant hereto, Defendant was engaged in the business of designing, manufacturing, testing, labeling, marketing, distributing, and selling prescription pharmaceutical products, including the medication that is the subject of this action, for sale to consumers throughout the United States.

**JURISDICTION & VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), as there is complete diversity between the parties and the amount in controversy is in excess of $75,000.

4. Defendant transacts business in Davidson County, Tennessee, and placed the subject medication into the stream of commerce with the expectation that it would be purchased and consumed in Tennessee.

5. Plaintiff was prescribed, and purchased, ,the medication in question from Urology Associates, located on Charlotte Avenue, Nashville, Tennessee.

6. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §1391 (b)(1) and (2) because a substantial portion of the facts and events giving rise to this cause of action took place in the Middle District of Tennessee.

**FACTS**

7. On or about August 15, 2025, Plaintiff filled a prescription for Tadalafil medication that was prescribed by his treating physician.

8. The dosage prescribed by the physician at Urology Associates on August 15, 2026 was for one 20 mg tablet, as needed, for the treatment of multiple urological conditions.

9. Plaintiff had been prescribed and consumed the same 20 mg per day dose, as needed, of Tadalafil for 6 years without medical incident.

10. Plaintiff's August 15, 2025 prescription for Tadalafil was filled at Urology Associates, with product designed, manufactured, tested, labeled, packaged, marketed, distributed, and sold by Defendant Unichem.

11. Defendant's product identifying information on the bottle provided to Plaintiff contained the following:

**GTIN 00329300289138**
**S / N 1P3FD4RFC7**
**EXP 2027-OCT**
**LOT GTAV24010**

12. Defendant represented on the Tadalafil label, packaging, and product insert that each dosage unit contained 20 mg of the labeled active pharmaceutical ingredient.

13. Plaintiff relied upon the representations on the medication label, packaging and insert, and ingested the subject medication as prescribed on three separate days over a 2 week period, believing each dose to contain 20 mg of the active pharmaceutical ingredient.

14. Beginning on or about late August or early September 2025, Plaintiff began experiencing severe adverse effects associated with taking the subject medication.

15. Concerned that the medication he was consuming might be causing his new medical symptoms, he immediately ceased taking the prescription.

16. Further inquiry resulted in a determination that the dosage of the prescription provided to Plaintiff was approximately 52.8 mg of active pharmaceutical ingredient per pill/dosage, which is approximately 263.8% of the 20 mg labeled amount.

17. The subject medication was in a defective and unreasonably dangerous condition when it left Defendant's control, in that it contained a dose of active pharmaceutical ingredient materially greater than the dose stated on its label and greater than any dose approved or safe for human consumption..

18. Plaintiff's injuries were caused by his ingestion of the misbranded, overdosed medication designed, manufactured, and sold by Defendant.

19. At all times relevant hereto, Plaintiff used the subject medication in a manner reasonably anticipated by Defendant; Plaintiff exercised due care for his own safety, took no more of the medication than prescribed by his physician, and did nothing to contribute to his injuries.

**CAUSES OF ACTION**

**COUNT I – STRICT PRODUCTS LIABILITY**

20. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

21. Defendant designed, manufactured, tested, labeled, packaged, marketed, distributed, and sold the subject medication and placed it into the stream of commerce.

22. The subject medication was in a defective condition and was unreasonably dangerous to the user at the time it left Defendant's control, in violation of the Tennessee Products Liability Act, T.C.A. § 29-28-101, et seq., in that each dosage unit contained approximately 52.8 mg of active pharmaceutical ingredient rather than the 20 mg represented on the label, approximately 263.8% of the labeled dose.

23. The subject medication reached Plaintiff without substantial change in the condition from when it was sold by Defendant.

24. The defective and unreasonably dangerous condition of the subject medication was the direct and proximate cause of Plaintiff's injuries and damages.

## COUNT II – NEGLIGENCE

25. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

26. Defendant owed Plaintiff a duty to exercise reasonable care in the design, manufacture, testing, quality control, labeling, packaging, and distribution of the subject medication, including a duty to ensure that each dosage unit contained the amount of active pharmaceutical ingredient stated on its label.

27. Defendant breached these duties in that it:

(a) failed to formulate, compound, and manufacture the subject medication so that each dosage unit contained the amount of active pharmaceutical ingredient represented on the label;

(b) failed to implement adequate quality-control, quality-assurance, and testing procedures to detect dosage units that exceeded the labeled potency;

(c) manufactured, distributed, and sold dosage units containing approximately 263.8% of the labeled dose of active pharmaceutical ingredient;

(d) failed to warn Plaintiff, his prescribing provider, and his pharmacy of the risk that the subject medication contained active ingredient in excess of its labeled potency;

(e) failed to follow the mandates of 21 U.S.C. §§ 351 and 352 governing the manufacture and labeling of prescription pharmaceutical products, including, by allowing an adulterated product to be released for distribution with a false and misleading label;

(f) failed to conduct appropriate laboratory determination of satisfactory conformance to final specifications for the drug product, including the identity and strength of each active ingredient, prior to release, in violation of 21 CFR § 211.165;

(g) failed to appropriately sample, test, or examine each lot of components, drug product containers, and closures prior to approval and use in commerce, in violation of 21 CFR § 211.84; and

28. Defendant's conduct asserted in ¶27. (e),(f) and (g), above, was intentional, grossly negligent and extremely reckless.

29. Defendant knew it had a duty to conduct required testing, yet chose to ignore the legal requirements and failed to test the actual potency of its active pharmaceutical ingredients before putting the product into the stream of commerce.

30. As a result of Defendant's choice to not test its product as required, it distributed its dangerous and defective product, seriously jeopardizing the health and welfare of consumers, specifically including Plaintiff.

31. Defendant's negligence, *negligence per se,* and gross negligence were the direct and proximate cause of Plaintiff's injuries.

32. Plaintiff suffered injuries and other compensable damages as a result of Defendant's above-stated actions and omissions.

**COUNT III – BREACH OF WARRANTY**

33. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

34. Defendant was in the business of manufacturing and selling pharmaceutical products, specifically including Tadalafil.

35. Defendant expressly warranted, through its labeling, packaging, and product information, that each dosage unit of the subject medication contained 20 mg of active pharmaceutical ingredient and was safe and fit for its intended use.

36. Defendant further impliedly warranted that the subject medication was merchantable and fit for the ordinary purpose for which such medications are used, pursuant to T.C.A. §§ 47-2-314 and 47-2-315.

37. Defendant breached these express and implied warranties by manufacturing, distributing, and selling dosage units that contained approximately 52.8 mg of active pharmaceutical ingredient rather than the 20 mg labeled dose, rendering the product unmerchantable and unfit for its intended use.

38. Defendant's breach of warranty was the direct and proximate cause of Plaintiff's injuries and damages.

**DAMAGES**

39. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe permanent physical injuries and physical and mental pain and suffering, all of which have in the past, and will in the future, require him to incur or become liable for certain medical and other expenses.

40. As a direct and proximate result of Defendant's conduct, Plaintiff has experienced a loss of enjoyment of life, lost income and loss of earning capacity and opportunity, and has had serious physical and mental pain and suffering, and will continue to suffer so in the future.

41. As a direct and proximate cause of Defendant's extremely reckless misconduct in violating testing and labeling laws as stated hereinabove in this Complaint, Defendant jeopardized and cause severe injuries to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff prays:

1. That Plaintiff be allowed to file this Complaint and that Defendant be required to answer the Complaint in the time provided by law;

2. That after the discovery process, this case be heard on its merits;

3. That Plaintiff be awarded TEN ($10,500,000) MILLION DOLLARS for economic and non-economic compensatory damages;

4. That Plaintiff be awarded punitive damages in an amount equal to two times the compensatory damages awarded in this cause, but not less than $500,000, for the intentional, extremely reckless and dangerous conduct of the Defendant.

5. That Plaintiff be awarded court costs, discretionary costs, and all further relief to which he is entitled;

6. That Plaintiff be awarded all such further and general relief that the Court deems appropriate.

FURTHER, Plaintiff prays for the costs of this cause and for a jury of six (6) persons to try this cause.

Respectfully submitted,

/s/ Mary A. Parker
Mary A. Parker
TN Bar. #006016
**PARKER & CROFFORD**
5115 Maryland Way
Brentwood TN 37027

Tel. 615-244-2445
Fax 615-255-6037
mparker@parker-crofford.com

*This document was prepared with the assistance of LOIS, Filevine's AI drafting tool, working from a prior work product of Parker & Crofford, used as a drafting template, and has been reviewed and modified for accuracy and completeness by Mary A. Parker of Parker & Crofford.